Secretary of the United States Department of State and Official Capacity et al. Mr. Yee for the appellants, Mr. Rossman for the amicus curiae, and Ms. Perez for the appellees. Thank you so much. I deeply appreciate this honorable court offers me with such a precious opportunity to present the appellant's grievance to this honorable panel. I'm also thankful to my colleagues on the appellant's side for their precious time to accompany me with this journey leading to this glorious courtroom. Your Honor, first of all, I want to read a few words in the letter to the judge by my client, by my client, Li Hongxia. Let me ask you, is it Mr. Yee or Mr. Yee? Mr. Yee or Yee, whatever. What do you say? And my client's letter said, in 2011, my mother's suffering stroke. In his dying bed, my former New Jersey immigration attorney prayed to the immigration authorities for humanitarian advance parole, and it was rejected. My mother died without me being on his dying bed. In 2014, my father was again suffering a dying disease and cannot see me. I lost opportunity to attend the funeral and the burial ceremony, everything. This humanitarian disaster was caused by the incident in 2009, October 26, and my client, Li Hongxia's U.S. passport, properly issued by the Department of State, and was confiscated at her entry. And then in 2011, he filed an application for the passport with the Department of State, and it was rejected because the Department of State in 2012 replied, your passport had been revoked because the CIS had canceled your naturalization certificate. And we, this case was, you know, one of the group of, a group of Chinese ethnicity U.S. citizens who received the passport. And then, all of a sudden, these passports were deemed, you know, illegally procured without any proceedings, without any evidentiary hearing. And this, and it was because one tainted witness, Mr. Robert Schofield, pinpointed, tipped off the government in his guilty plea, and 200 Chinese ethnic, of Chinese ethnicities who claimed to be United States as co-conspirators in his, you know, alleged procurement of U.S. citizenship. However, you know, my clients are one of those, you know, among those 200. And the allegation, without any cross-examination, without any due process, without any proceedings, was built upon blended, blended type of erroneous and misrepresentation. And because, you know, the government is filing. In terms of process, Mr. Yeh, two of your clients did take advantage of the opportunity to further review of the preliminary determinations. And then, I gather, three of them did not take that opportunity. Is that right? When their passport was revoked, they're told that they have 60 days they can raise a question. Yes. Yes. But, Your Honor, in, you know, the case law of this jurisdiction, this circuit, said if the so-called proceedings are, you know, in its practice and in its pattern, that has demonstrated it's completely useless. And because of government's mindset, strongly mindset, and those, we cannot take, you know, such kind of exhaustion of proceed process should be waived. And that's the case, Ronald Vandos versus Weinberg. And also, let me, can I read it to that? Exhaustion would be clearly useless, such as where the agency has evidenced a strong stand on the issue in question and unwillingness to reconsider the issue. Vandos versus Weinberg, 795F2LVDC, Circuit 1986. Can you also tell me, it wasn't clear to me in the record, where each of your, what the residence is of each of your clients? Because as you know, the district judge said that the 1503 claim has to be brought, for example, for Lee Hong Xia in New Jersey. Do we know where each of these clients lives? I think Hua Chun, I don't have information. Was that Los Angeles? Yeah, Your Honor, their residence are varied. And Lee Hong Xia's current residence is in New Jersey. And when she filed this case, it's alleged in the complaint that she was in New Jersey. Yes, yes. And when the case was filed, Hua Chun Li was living in Los Angeles? Yes, in Los Angeles and in Greater Washington, D.C. And Wei Liu was living in Los Angeles? Yes. And also Hua Chun in Los Angeles? Yes, Your Honor. And how about Jin Song Chen? Where was Jin Song Chen living? Where was Jin Song Chen living when the case was filed? My understanding, he is now stuck in China. Right, but when the case was filed, where was he living? In China. In China, so he doesn't have a U.S. residence? No, he is a U.S. citizen. But residence? Residence in Los Angeles as well, yeah. Okay. I think if you want another minute after the government has spoken, we'll give you a minute to respond. Okay. But I think... Yeah, can I just add one word, one sentence? And what Mr. Scofield, the tainted witness, pinpointed is completely wrong. And he alleged, without cross-examination, that Mr. Li Hongxia's parents, father and mother, were among those 200, you know, tainted suspects. Actually, in her affidavit, she, you know, stated and oath, neither her parents had ever been to the United States, much less to have chance to meet Mr. Scofield. Be assured, we read her declarations and her affidavits and the record. Thank you so much, Your Honor. Thank you. Mr. Rossman? May it please the Court, I'm Michael Rossman. I'm representing the Amicus Center for Individual Rights. I'd like to discuss two issues with the Court today from our amicus brief. First, whether the 1991 Civil Rights Act restricted the application of Section 1981 so that it no longer applied to acts of discrimination by the federal government. And second, whether the allegations in the complaint of race discrimination state a claim under the equal protection component of the due process clause of the Fifth Amendment. First, with respect to Section 19- I thought the equal protection claim had been abandoned on appeal. I don't see that being briefed. I thought Mr. Yee did brief it on appeal and that he referred actually to various parts of the amicus brief that I had mistakenly put in on summary affirmance, but I could be wrong. Go ahead and address the arguments. With respect to Section 1981, the question is, what weight should the interpretive tool of expressio unius have in comparison to the interpretive tool of resuming against implied repeals? So Section 1 of the 1866 Act had been held by the Supreme Court to apply to acts of the federal government prior to 1991. In 1991, Congress amended Section 1981 and added 1981C, which says that the rights under Section 1981 are protected against impairment by nongovernmental discrimination and impairment under color of state law. And the question is, did that implicitly repeal those prior interpretations of the Supreme Court? The legislative history gives us no indication of that. What the legislative history suggests is that Congress was trying to emphasize where Section 1981 does apply, that they were trying to confirm the holdings that the Supreme Court made in Patterson and Runyon. It does apply to private discrimination. It does apply to state discrimination. There is nothing in the legislative history that suggests that Congress wanted to say that it no longer applies to the federal government or, for that matter, that it no longer applies to territorial governments like, for example, the District of Columbia government. I recognize, Mr. Rossman, that your principal interest is in the broad question. But do you have a position on the pleadings? I thought you said you did, whether these pleadings state a claim under Section 1981. It's a little bit difficult to see what the factual allegations are of racial or ethnic discrimination, given that we simply don't know the race of other people similarly situated whose certificates of naturalization and or passports have been revoked or suspended based on allegations of fraud by a member of the State Department. And what's the impaired contractual relationship? Your Honor, let me say that I think in answering both of these questions, you really need to look at the rather peculiar procedural history of this suit in the district court. So the government... Well, if they're looking at it, that'll answer the question, please, counsel. What's the impaired contractual relationship? I don't know that there is one clearly stated in the complaint at this point. But what I think is... Isn't that the end of it? Isn't that the end of it? I mean, you're advancing an interesting notion about the reach of 1981, but we can't get there if you don't have an alleged impaired contractual relationship, as you know. That's right, Your Honor. But what happened here is that the government moved under Section 12b-1. The district court denied that motion and then sua sponte dismissed the case or dismissed the claim, I should say, under 12b-6. The court below never suggested that there was any other defect or flaw in the Section 1981 allegations. And so the plaintiff was given... You're looking at that backward. It's not a matter of a flaw in the allegations. It's a matter of an inadequacy of the allegations. He didn't hold that this is a good claim that's missing a piece. You don't get in court unless you've stated the claim and you didn't state the impairment. Well, he didn't. What the court below held is that the plaintiff didn't plead impairment under color of state law. We believe that's just a legal error. The other elements of Section 1981, the court didn't mention at all. Well, it all depends on how you read that, the focus on impairment. Impairment of state law, but the impairment is a contractual relationship. There isn't any assertive. Right, Your Honor, but my point, I think, is that the court below's basis for stating that was that whatever happened was not under color of state law. Right, and the question I think that we're asking is, is there an alternative ground on which this complaint is defective? Because it does strike us that there are some candidates. One, Judge Edwards has pointed out that Section 1981 is generally applied in cases of rights to make and enforce contracts. Do you have a position on the scope of the rest of Section 1981, to the full and equal benefit of all laws and proceedings for the security of persons and property, as is enjoyed by white citizens? Is that what the plaintiff here is relying on? Because I didn't see that argument. A position, Your Honor, but it all applies. I guess what we would say is, given that the court below focused on this one element, state law, the appropriate thing to do here at this stage would be to, if one were inclined to dismiss on a different ground, to give the plaintiff an opportunity to replead. The court below gave him an opportunity to replead, but never mentioned any kind of defect in any other element of Section 1981. So the plaintiff had absolutely no reason to believe that it would be at all useful to do that. You're aware that we can affirm on a different ground than that stated by the district court? I am aware of that, Your Honor, but what I'm suggesting is that affirmance would be inappropriate because what the court did is deny the motion to amend the complaint. But it's been well established that Section 1981 applies to racial discrimination, so there does need to be a plausible allegation of that, and it's the plaintiff's burden in pleading to know the law and to plead the claim in accordance with it. And I recognize that this is a challenging area. The complaint does allege race discrimination. It alleges it in paragraph 37 of the complaint. It doesn't allege any facts that wouldn't support that conclusion. Well, if you look in the appendix of Hound, pages 161 or so, there's a whole chart that the plaintiff tried to put into the record that I think was an effort by them to demonstrate that there was racial discrimination behind this. Of course, the plaintiff didn't need to plead. Did it show anything about this retreatment of persons similarly situated? Well, again, Your Honor, I think at the complaint stage, the complaint only needs to allege that. It doesn't need to... It needs to allege more than the conclusion. We're in the post-quantum and post-state law era when it's been made plain, plain, that a plain statement because of that kind of claim to relief requires actual factual allegations and not just a conclusion to be legal. And, Your Honor, if the district court had said that, and it said you need to go back and replead and state something that meets the requirements of ICBOA insofar as your racial discrimination allegations are concerned, I would agree with you. It would be appropriate for this court to affirm the judgment to the court below. But that's not what happened. What page of the record, J.A., is that chart on? What page of J.A. was that chart on? 161? I believe that's right. I've gone over my time, Your Honor, but I appreciate the court giving me the opportunity. I'm sorry, do you have another question? No, thank you, Mr. Rossman. Thank you. Good morning. May you please support? My name is Eliani Spedes on behalf of the government in this case. This court should uphold the well-recent decision of the district court denying Sapan's motion for relief to file an amended complaint as futile because the amended complaint is deficient and would not survive a motion to dismiss under federal rule of civil procedure 12b-6. Similar to the original complaint, the amended complaint recites general conclusory statements and accusations against the government and fails to articulate how the United States, USCIS, and the Department of State violated any of the listed statutes. It's not the clearest complaint, but some things one can easily discern from it. And it was inartful in using Section 1983, but surely under Ex parte Young, one can bring an injunctive action against the United States for a denial of due process, right? Your Honor, yes. However, the complaint cites several causes of action. One of the causes of action is a violation, is a due process violation against USCIS. However, the complaint fails to state how USCIS violated due process in this case. Well, it's actually quite clear. I mean, the complaint says, and the consistent position in the administrative proceedings and in the complaint has been, you can only denaturalize someone in court. And I think that's well supported in the law from the Supreme Court on down. So it's not your position that these individuals are, in fact, non-citizens, right? Your position is that they're citizens? No, Your Honor. Our position is that these individuals are not United States citizens, and what USCIS did here was legal because it canceled their legally procured certificates of naturalization. How can they be not citizens if the only lawful way to remove someone's nationality is through judicial determination? Judge Chapman. Yes, Your Honor. The key difference in this case is that these individuals didn't procure, illegally procure naturalizations. What they procured illegally was a certificate of naturalization. They never went through the process of becoming a United States citizen. And that process requires the individual to demonstrate that they meet all of the statutory and regulatory elements to become a United States citizen. Let me go through the facts with you to make sure I understand. As I understand your procedural due process argument, you're saying that their claim on the passport with respect to procedural due process fails because they clearly had procedural due process with respect to the revocation of the certification for naturalization and that that should carry over and that should be sufficient because the passport denial or revocation was based on the revocation of the certification for naturalization, right? Well, Your Honor. Right? Yes. Okay. With respect to Shia, the record indicates, your information in the record indicates, that the passport was revoked in September of 2012, but the certification of naturalization was revoked in August of 2013. So your theory doesn't follow. Well, Your Honor, with respect to plaintiff Shia, although the complaint does not state these facts, the procedural history regarding her appeals through USCIS was a little bit lengthy and that is the reason why there's a discrepancy between the dates. However, to the extent that she does have a 1503, that she's claiming that the revocation of her passport was illegal or that she's entitled to a U.S. passport, Ms. Shia has the ability to bring a 1503 action in district court in the district where she resides, pursuant to 8 U.S.C. 1503. Well, there's a question as to whether that satisfies the requirements of procedural due process. That alone. Well, Your Honor. You can't rest on the revocation of the certificate of naturalization because it didn't occur until after her passport had been revoked. So your argument is that the statutory, the right to come to court, is all the process that she's due. That is the post-action process in court as opposed to pre. Yes, Your Honor, that is the due process that she's due and the courts have repeatedly stated that to the extent an individual is challenging the revocation, for example, of their U.S. passports because that individual is clear, does not have the ability to bring an administrative procedure within the Department of State. That individual has due process because that individual is able to bring a 1503 action in district court. Except there is some procedural due process law that you're supposed to get processed pre-termination. Especially when you're talking about citizenship. I mean, these are individuals who have prima facie evidence of citizenship. And I understand it's your position that it was invalid and procured by fraud. But in Schneiderman, the United States Supreme Court said even where the claim is that the citizenship has been procured by fraud, the burden is on the government by clearing convincing evidence to show that fraud. And the evidence of fraud is certainly not in the district court record in this case. There's nothing that we can look at in the district court record to trace the actions of Mr. Schofield to any of these individual plaintiffs. So the notion that this could be dismissed on the pleadings based on the fait accompli of the United States government is a little bit surprising. Your Honor, what the court did here, it gave plaintiffs an opportunity, two opportunities to state claims. Factual allegations to substantiate their claims. They've shown prima facie evidence of citizenship. The government's burden then, if the government chooses to denaturalize them or show that their naturalization was never valid, non pro tonque, due to fraud, is to show that by clearing convincing evidence. And I haven't seen that evidence. Is that available in the public record anywhere? Your Honor, again, in this case, these individuals did not procure citizenship illegally. What they procured was a certificate of naturalization. And what USCIS did, and the relief that they're seeking, is for USCIS to reissue them their certificate of naturalization and for the Department of State to reissue their U.S. passports. Again, USCIS was within its authority to revoke, to cancel the certificate of naturalization and gave these individuals the ability to challenge the cancellation of the certificate within the administrative process. And normally, Defendant Sia, Appellant Sia, did so. She challenged it within USCIS, and then she challenged it again within the Administrative Appeals Office. Defendant Appellant Wei Liu only challenged the cancellation of his naturalization certificate through USCIS and failed to appeal the decision to the AAO. And the complaint is deficient of any facts concerning any sort of exhaustions from the remaining appellants in this case. If you have to have pre-termination process, you didn't show it or you don't show it on these facts with respect to Sia because the passport was revoked before the certificate of naturalization was revoked. And so, therefore, there was no process. And you're saying, well, she can get it in court, but that misses the point. The point is, before you come to court, the government's supposed to be able to show that she had access to pre-termination process. Well, she couldn't have had it if you terminated the passport before the certificate of naturalization was revoked. Your Honor, again, even if the Appellant Sia had the ability to go before USCIS to challenge the cancellation of her naturalization certificate, the complaint is deficient in showing. That didn't occur until after the passport. I'm talking about the passport. They're making a claim on due process with respect to both. So she's making a claim that my passport was revoked without procedural due process. Well, facially, that looks correct because you had not taken action yet with respect to the certificate of naturalization, but you went ahead with the passport. Your Honor, I understand the Court's concern. However, in this particular case, the defendant Sia had the ability to bring a 1503 action before federal court. That's not pre-termination process. I'm sorry. Go ahead. Your question, behind the question, there certainly are circumstances in which post-deprivation due process is sufficient. Is it the government's position that this is one of the circumstances in which it is not necessary to have a pre-deprivation process, but due process post-deprivation is sufficient? I'm sorry, Your Honor. Can you please repeat that question? I doubt it. It is not the case that there always has to be due process before the deprivation of right. There are certain circumstances in which post-deprivation due process is sufficient. Is it the government's position that this is one of those cases in which post-deprivation due process is sufficient to meet the constitutional requirement? Yes, Your Honor, it is. Why? Your Honor, because, again, the Department of State has the ability to revoke U.S. passports if it has evidence that USCIS has revoked the denaturalization certificates. And here, again, the complaint is very unclear as to exactly how Ms. Sia went through the administrative appeals. No, that's not the question. Judge Santel is asking you, why do you think in this category of cases, the same thing I'm trying to ask you, post-deprivation process is enough? Your Honor, because... We know what the facts are, but why do you think it's enough as a matter of law? Your Honor, cases have established over and over again that because the appellant in this case would have an ability to go in federal court and challenge that revocation, that is sufficient. What's your closest case that it is sufficient to have post-deprivation process? If I may, Your Honor, look at my notes. If I may have a moment. Your Honor, I can't find the case right now, but if I may submit supplemental briefing on the issue. But it is part of my appellate brief. May we have leave to ask the government to file a response to the post-deprivation issue? Certainly, and appellants would also have an opportunity to respond to that. I'm just looking at a recent decision of our court, United States v. Straker, in 2015, that's 800 F. 3rd 570, in which we were reciting what the district court did. And we said, citing a long and unbroken line of Supreme Court precedent, see United States v. Zooka, see also Binsiak v. Finucane, the district court held that AUSC 1451, which is judicial proceeding, permits the United States attorney to institute denaturalization proceedings in a federal district court. It's the exclusive procedure for voiding the citizenship of a person naturalized due to fraud. Now you take the position that these people were not naturalized, and therefore that this doesn't apply, but I don't understand how that could be distinguished from this line of cases. I mean, if somebody is naturalized due to fraud, one position is they were never naturalized. But from the perspective of the plaintiffs in this case, they had all the indicia of citizenship, they went through the process, and nothing in the pleadings shows that that was non-protunct and valid. I mean, you have to go through a process to make the case. And I don't have any doubt that the United States may have a very strong case here, but the question is, has it laid it out? And when does it need to lay that case out? When does it need to connect the dots between Mr. Schofield and each individual who they claim was somehow involved in Mr. Schofield's fraudulent issuance of naturalization certificates? It's really hard to tell that from this record. Your Honor, again, what the district court did here was to deny a motion to amend the complaint as futile because the factual allegations in the complaint just didn't support a cause of action. In this case, there's nothing in the complaint to show that these individuals actually went through the process of naturalization. What they're asking, they're challenging is the cancellation of their naturalization certificates. To the extent that the complaint fails to state a cause of action, USCIS under 8 U.S.C. 1453 has the ability to cancel an illegally procured naturalization certificate, and the actual statute itself states that the cancellation of that certificate only cancels the document itself and not the citizenship status of the person. Exactly, and therefore, you have not shown these people not to be citizens, and therefore, that remains an open question. But you're taking the position, and in fact, I understand in the document, saying why people's passports were taken away, you know, entering alien. So the government is taking, you know, speaking out of both sides of its mouth, is taking the position that these people are aliens, even though you can't accomplish that merely through 1453. Your Honor, if the government, assuming for the sake of argument, were to bring a 1451A action, it would not be able to do so, because in this case, these individuals didn't go through the process of naturalization. They just simply obtained a certificate of naturalization. There's nothing in the document. Well, we're talking about different things, unfortunately. I understand the point you're making. Now, that wasn't the point I was raising. The one case you do have, and I don't know whether it's enough, I don't know that we've addressed it, is an 11th Circuit case, a 2016 case, Martinez v. Secretary of State, which says we can find no merit to the claim that the government's revocation of his passport without first holding a hearing denied him due process, 1503 affords individuals like Martinez robust means for challenging their administrative denials. That's your authority. I don't know if there's anything else, but that's the authority. That's answering the question I've been trying to raise for you and that my colleagues have, what process was given to ZR with respect to the passport denial. And you're saying you can rest on 1503 and that's enough. You've got the 11th Circuit with you on that. Yes, Your Honor, that is correct. And I believe that also my brief states there are other cases specifically out of the Southern District of Texas. Any other court of appeals? It's not that we disfavor district court. We like court of appeals cases. Of course, Your Honor. I'm looking right now at my brief. I don't even think you cited the 11th Circuit. I don't remember you citing any other court of appeals case. Your Honor, again, if Your Honor would like, I am more than happy to submit. You've got the authority. If that's all you're talking about, then we know what you're talking about. If you have any other court of appeals authority, it would be interesting. But that's your answer, I guess, on the revocation of the passport. Yes, Your Honor. You don't have to rest on a preceding revocation of the certificate of naturalization, which does allow for administrative process, you're saying, because 1503 is enough. And you have one case that supports that. Yes, Your Honor. All right. Your Honor, furthermore, with regard to the Civil Rights Act, the district court, again, there are so many different claims and clauses of action in this case. I'm just going to go down through sort of the remaining. Let me just ask you again on the statutes and on the process. Is it correct that the State Department refused to grant the plaintiffs a post-cancellation hearing under 1504? The State Department? The State Department, Your Honor? Yes. The State Department, there's no administrative way in which the State Department can actually have a hearing on the cancellation of the revocation of the passport. Again, and our position remains is that to the extent that they do have a, they want to challenge the revocation of the passport, the process that's due to the plaintiffs or to the appliance is for them to file the 1503 cause of action and follow the procedures under USC 1503. Okay. I think you're really talking past each other because the plaintiff's position here is that they are citizens. They had evidence of citizenship, the prima facie evidence of citizenship, and your position is know that you can assume that away without having established the premise of your position, which is that these were people who were affected by Mr. Schofield's fraud, and they say we filed the applications, we were legal permanent residents, we went through, you know, we paid the fee, we got the evidence of it. You know, went and did the whole nine yards. Your Honor, I see that I'm out of time. If I can just respond to your question. Please. Your Honor, again, to the extent that they're claiming that there are U.S. citizens, USC 1503 allows them the opportunity to show that in court. They want, these plaintiffs are saying that they're U.S. citizens, that they went through the process, and that they're entitled to their U.S., their naturalization certificates. Here, USC 1453 allows USCIS to cancel illegally obtained naturalization certificates, and that's exactly what USCIS did. Now, to the extent that they're saying that they're entitled to that, or that they're entitled to a U.S. passport, USC 1503 allows them to specifically address those allegations in federal court, and allows the known determination of whether these individuals actually went through the process and naturalized as they say that they did. Right, but the burden is on the government in denaturalization under 1451, and that's the difference, and I think that's the nature of their due process claim, and that's Ex parte Young and responding about Section 1983 being unavailable. It's just not really meeting that, you know, joining issue with the gravamen of the complaint, but it's been helpful to hear from you today. Thank you. Thank you, Your Honor. And Mr. Yeh, we'll give you one minute to respond. Your Honor, thank you so much for you to raise the issue of the government's burden of proof. And, yes, in Gorbachev versus Reno, and the circuit is clear that the burden had been shifted to the government to prove that fraud had been committed. That's not and we have already long passed the, you know, the stage of application stage. And so burden had been shifted. So the government's argument that none of those appellants have proven they have gone through the application procedures has, you know, deliberately shifted the burden upon the appellants. Additionally, we do have the proof that these appellants does and did go through the application procedures. I apply the application. The government is not arguing that they denaturalized or purported to denaturalize your clients. That's where there's confusion here. The government is simply saying that they could probably revoke a certificate of naturalization. And, indeed, the regulation makes it clear that doesn't go to the question of citizenship, which is a court question. They're saying they could revoke a certificate of naturalization. And then you have a procedure that you can invoke. Your Honor, even this, you know, the section 1453, you know, empowered the attorney general to cancel the naturalization certificate. There is no proof on the government's side that those procedures were properly handled. Not even in such a on the surface mistake. There's no question there are procedures available to your clients. It's a different question as to whether you think they're inadequate. There are procedures available to your clients when there is a problem or the government purports or is about to revoke a certificate of naturalization. Your Honor. Certificate. This is not a denaturalization case. Thank you so much. Your question is quite crystal clear. And, yes, Your Honor. And the government did, you know, or at least intended to offer those administrative proceedings. Even though those proceedings doesn't make sense, it is said, you know, strongly use, you know, strongly minus it and become useless. And these proceedings, they even refused to correct the mistake that Bob Schofield said, you know, my client's parents were, you know, committed a fraud to procure those passports leading to the, you know, the apparent fraudulent procurement. Even if this kind of clear cut mistake, they refused to correct. And, Your Honor, another aspect is Section 1503, you know, gives, you know, passage, the avenue for the apparent challenge, to challenge the government's mishandling in fearless nature in this aspect. So we, and also the Britain action and the APA acts also provided, provided the, you know, certain, you know, procedural avenues. None of those were followed by the government. Also, Your Honor, this, for the totality of this case, and refuting the denaturalization proceedings to those clients and make the case, you know, in very absurd nature. It's not a denaturalization case. Yes. It's a revocation of a denaturalization certificate. That's different. This is not a denaturalization case. Yes, that, for pragmatic sense, that caused a humanitarian crisis. And a cancellation of certificate without denial, the U.S. citizenship. That bipolar, pathetic position has caused all kind of humanitarian, you know, crisis. At the same time, the People's Republic is such a peculiar country that its nationality law said if you once received a third country's citizenship, you automatically lost your PRC citizenship. Under these circumstances, the apparent, you know, sandwich, the government didn't give them voting pass to go back to China. And the U.S. government, as matter of law, they are still U.S. citizens. That's a very awkward situation, our clients. So the solution, we have once had a successful solution in a similar case once were filed in this court and my, you know, my attorneyship. And it was transferred to New Jersey and it was settled in July 2016. The settlement is, you know, they are not allowed to, you know, get back the citizenship. But they were given, you know, a permanent resident status. That's the settlement. We were so humble. We humbly proposed, what if I creatively give you a kind of avenue which would be reasonable? Not even green card. Give them, you know, U.S. status. Non-immigrant U.S. status. U.S. status means the victim of crimes. And we get rejected. This is something that is obviously beyond our consideration, what you might work out with the government. But the 1503 appears to be if, for example, your clients had copies of the documentation that they submitted in support of their original naturalization application. Yes. It doesn't answer the question whether the process comports with due process. But they do have an opportunity to take that packet of documentation under 1503 and go to the district court where they live. Where they live. And bring that and say, we're being treated as if we're not citizens. We are citizens. We were naturalized. Here is the proof that we submitted and went through everything. Schofield may have been extorting money. He may have been doing fraudulent things. We still qualify. Here is our proof. That's what 1503 allows you to do. And that is still available to you. It may or may not answer this case. But it's in your client's interest to pursue that is my understanding. If the government could. In the correct venue. In the correct venue. This is not the correct venue. Your Honor, can I give a very brief footnote? And I heard. But this case is not just one issue, single issue case. And this case also concerning property rights that were taken without due process. The State Department. And if the other issue were brought into the picture. Then the USC 1391 should be kicked in. 1391 provided that defendant's place of foreign should be the proper venue. And the U.S. Department of Correspondence status. And your passport has become the property of the government of the United States. There is no hearings, no proceedings provided according to section 51-70 and 51-74. And the title 22nd of CFR. So this is typical taking without due process. No, I understand that it is frustrating. But there is that one process that it would be advisable to consider. And this case we will take under advisement. Thank you. Thank you so much.
judges: Pillard, Edwards, Sentelle